Winants *v.* Terhune.

---

WILLIAM WINANTS, executor, appellant, and MARIA TERHUNE, respondent.

The personal property of a testator is by law the primary fund out of which the debts are to be paid.

Properly nothing is the personal estate of the testator which was not so at his death.

If a testator directs lands to be sold and converted into money to *pay his debts*, the proceeds become a fund which is liable for his debts.

But where the conversion of the land into money is ordered in the will for a *specific purpose*, as if the direction is to convert the estate in order to give a legacy, the creditors cannot claim the money as personal estate.

The will in question contained the following clause: " I also order my executors to sell my house and lot at Binghampton, Broome county, and state of New York, as soon as conveniently can be after my decease, and to execute lawful deeds for the same, if I don't dispose of the same in my lifetime; and the money arising therefrom must be paid by my executors towards the debt of my son Peter, where I am bound as surety for my son Peter; the remainder of the purchase money of the house and lot, if any there should be, I give unto my daughter-in-law Charity Ann, the wife of my son Peter." The executors sold the premises, and there was a remainder after paying the debts specified; and on an application to the Orphans Court for an order to sell lands on a deficiency of personal property to pay debts, that court refused the application on the ground the remainder of the proceeds of the sale of the Binghampton property was personal estate, and must be applied to the payment of the several debts—

Q*

Winants *v.* Terhune.

*Held,* in the Prerogative Court, reversing this decision of the Orphans Court, that the proceeds of the sale of the Binghampton property could only be regarded as personalty for the *specific purposes* designated in the will, and that an order should be made to sell lands to pay the general debts.

*A. O. Zabriskie,* for appellants.

*Hopper* and *Banta,* for respondents.

The following state of facts is agreed upon by the parties and their counsel to be used upon the hearing of the appeal.

That it was shown to the Orphans Court, upon hearing the application, that the rule to show cause has been duly advertised in the manner prescribed by law.

That there was no evidence of any personal property, other than the sum of four hundred and seventy-one dollars and ninety-three cents, set forth in the two items of amounts of debts and credits.

That it was shown to the court, by proof, that all the items set forth in the account of debts and credits rendered by the executor were debts due from the deceased, except the sum of forty-three dollars and forty-seven cents, stated to be due to Stephen Goetchius, and except the item of fifteen dollars, for funeral expenses, which sum was paid by the executor to Peter I. Terhune, the father of the deceased, upon his allegation that he had advanced it to the widow for funeral expenses, which debt so proved, after deducting the said two sums, amounts to nine hundred and seventy-two dollars and seventy-six cents.

It was further shown that the amount of four hundred and sixty-three dollars and seven cents of said debts had been paid by said executor, besides the fifteen dollars for funeral expenses and the sum of twenty-five dollars paid Richard R. Paulison, for surrogate's and Orphans Court's fees, in the settlement of this estate.

It was shown, by proof, that the said testator had real estate in the county of Bergen, consisting of a farm, containing fifty-eight acres, and three out-lots, containing seventeen and

one half acres, and the situation and relative value of said land was shown.

The will of the deceased, with the probate thereof, was offered in evidence, *pro ut* the same.

The inventory of the estate of deceased was offered in evidence, *pro ut* the same.

It was shown that deceased died, on January 20th, 1851, leaving ten children, seven of whom were minors under the age of twenty-one years.

It was shown that the deceased had a house and lot at Binghampton, Broome county, state of New York, which was conveyed to him by his son Peter, June 11th, 1850, for the sum of twenty-three hundred dollars, six hundred and seventy dollars of which sum the deceased was liable to pay on notes of that amount on which he was security for his son Peter, six hundred and seventy-five of which the deceased borrowed on his own sundry notes for his son Peter, and the sum of one thousand dollars of which was cash, which the deceased lent to Peter; that said property was subject to two mortgages, amounting to seven hundred and fifty dollars.

It was shown that the consideration of the deed for the Binghampton property from Peter to testator was for money taken up by deceased for his son Peter, and also for what money he had lent him; and the arrangement between the deceased and his son Peter, when deceased took the deed from Peter for the Binghampton property for this money advanced to Peter, was that when Peter could pay one thousand dollars on the property, he would reconvey it to Peter, and take a mortgage for the balance. Peter was to pay him the whole amount either in cash or securing him by mortgage as above.

It was shown that the three items, of six hundred and seventy dollars, six hundred and seventy-five dollars, and one thousand dollars, were charged against Peter in a small book kept by the deceased, and shown the executor.

Five letters from Peter to the testator, dated June 11th, June 16th, June 24th, January 9th, and February 24th, 1850, were offered in evidence, *pro ut* the same.

Winants *v.* Terhune.

It was shown that Peter had leased the store on the Binghampton property for two hundred dollars per year, which lease he gave to the deceased. Peter, with his family, also lived in the house, which contained four living rooms besides bed-rooms.

It was shown that the personal property was sold by the executor to the widow of testator at inventory prices, and paid for by her.

It was shown that the executor, without having proved the will in the state of New York, sold and conveyed the house and lot at Binghampton, Broome county, New York, mentioned in the will of the testator, to Charity Ann, the daughter-in-law of the testator, and wife of his son Peter. That the consideration mentioned in the deed was two thousand dollars, of which the two mortgages, with interest due thereon, formed part, and the sum of seven hundred and sixteen dollars and forty-five cents was paid in discharge of five notes of the testator's son Peter, whereon the testator was security, and on which said sum was due, and the residue of said consideration, amounting to eight hundred and thirteen dollars, was retained by Charity Ann, the wife of Peter, being claimed by her by virtue of the bequest to her in the will, as by a receipt from said Charity Ann to said executor, dated June 2d, 1851, which said receipt was offered in evidence, *pro ut* the same.

It was shown that Richard R. Paulison, an attorney at law, who drew the deed for the Binghampton property to Charity Ann, advised the executor, that if they chose to take the deed without the will being proved in the state of New York, it was no matter to him, the executor. The whole arrangement was so done to save expense.

It was shown that there was an order to limit creditors, and a final decree thereon by the Orphans Court of Bergen county, and that the executor had not filed any refunding bond in the surrogate's office.

It was further shown that the five notes above mentioned, upon which the testator was security for his son Peter, were

paid and taken up by said Charity Ann, and delivered by her to the executor in part payment of the consideration money of the deed to her.

It was further shown that part of the money, which the deceased borrowed on his own sundry notes for his son Peter, forms part of the indebtedness of the estate of testator, as exhibited in the amounts of debts and credits by the executor, consisting particularly of the following: Lawrence J. Ackerman, the sum of three hundred and fifty dollars and fifty-seven cents; Henry Ackerbach, the sum of fifty-four dollars and twenty-five cents; Christian W. Campbell, the sum of one hundred and eight dollars and sixty-nine cents, and Harman Van Dien, the sum of two hundred and seven dollars and twenty cents.

The executor presented his petition to the Orphans Court, praying a sale of the testator's lands to pay the debts. The respondent showed cause, and the Orphans Court, after hearing the parties, made an order refusing the application. From this order an appeal was taken to the Prerogative Court. The following is a copy of the will referred to in the state of the case:

In the name of God, amen. I, Henry L. Terhune, of the township of Hoboken, in the county of Bergen, and state of New Jersey, being weak in body, but of a sound disposing mind and memory, blessed be Almighty God for the same, do make and publish this my last will and testament in manner and form following, that is to say: *First.* It is my will, and I do order my executors herein after named to satisfy and pay all my just debts and funeral expenses as soon as conveniently can be after my decease. *Secondly.* I give, devise, and bequeath unto my beloved wife, Maria Terhune, all the remainder of my personal estate and all my land and real estate in the state of New Jersey to her own use till my youngest child arrives to the age of seventeen years, then I order my executors to sell all my land and real estate in the state of New Jersey, and to execute lawful deed or deeds for

the same, also all my personal estate, either at public or private, as they shall think proper; the money arising from the sale of my real and personal estate, the one-third thereof, must be put to interest by my executors, and the interest arising therefrom must annually be paid to my said wife Maria, as long as she shall remain my widow, in lieu of her right of a dower in all my estate; the remainder, two-thirds of the purchase money, must be equally divided between my children, share and share alike, after the death or intermarriage of my said wife; the principal sum that was put to interest by my executors must be divided between all my children the same as the aforesaid two-thirds of the purchase money. I also order my executors to sell my house and lot at Binghampton, Broome county, and state of New York, as soon as conveniently can be after my decease, and to execute lawful deeds for the same, if I dcn't dispose of the same in my lifetime, and the money arising therefrom must be paid by my executors towards the debt of my son Peter, where I am bound as surety for my son Peter; the remainder of the purchase money of the house and lot, if any there should be, I give unto my daughter-in-law Charity Ann, the wife of my son Peter, which I give unto her for her own separate use, and by taking her own separate receipt therefor. The share herein before given to my son Peter must be paid to my daughter-in-law Charity Ann, the wife of my son Peter, for her own separate use, and by taking her own separate receipt therefor. And lastly, I do nominate, constitute, and appoint William Winants and Henry Ritan executors of this my last will and testament, hereby revoking all former wills by me made.

In witness whereof, I have hereunto set my hand and seal this twenty-first day of September, in the year of our Lord one thousand eight hundred and fifty (1850).

Signed, sealed, published, and declared by the above named Henry L. Terhune to be his last will and testament, in the presence of us, who have hereunto subscribed our names as witnesses in the presence of the testator and of each other.

HENRY L. TERHUNE.

THE ORDINARY. The important question presented is, whether the eight hundred and thirteen dollars, which the executor realized from the sale of the Binghampton property, after paying seven hundred and sixteen dollars and forty-five cents in discharge of debts for which the testator was bound as security for his son Peter, were assets in the hands of the executor for the payment of the testator's debts. The Orphans Court decided that they were, and on that ground refused a decree for the sale of the lands of which the testator died seized.

The statute provides, that if, on full examination, the court shall find that the personal estate of the testator or intestate is not sufficient to pay his debts, they shall order and direct the executor or administrator to sell the whole, if necessary, of the lands, &c., for the purpose, or so much thereof as will be sufficient.

Were the assets in the executor's hands personal property, which by law he could apply for the payment of the outstanding debts of the testator?

The executor was ordered, by the will, to sell the house and lot at Binghampton for a specific purpose. That purpose was, to take the produce of the sale, and pay, first, the debt of the testator's son Peter, where he was bound as surety for his son, and the "remainder," if any there should be, the testator says, "I give unto my daughter-in-law Charity Ann, the wife of my son Peter, which I give unto her for her own separate use and by taking her own separate receipt therefor."

The argument on behalf of the respondent is, that the executor sold the Binghampton property, and thereby converted it into personal property; that the personal property is the primary fund which is to answer for the debts, and therefore this, as personal property, must be so appropriated.

It is true the personal estate of the testator is by law the primary fund out of which the debts are to be paid. But, as was said in *Mangham* v. *Mason,* 1 *Ves. & B. Rep.,* "Properly nothing is the personal estate of the testator that was

not so at his death." If a testator directs lands to be sold and converted into money to pay his debts, the proceeds become a fund which is liable for the debts of the testator, not because it is personal property, but because it is so appropriated, not *by law* but by the *will* of the testator. The testator ordered this land to be converted into money for a specific purpose. If the executor can appropriate it for any other purpose, it will be in direct violation of the will of the testátor. He cannot do it without violating both the law and the testator's intention, unless, because it has been converted into money, the law will stamp it as personal property for any other purpose than that designated by the testator.

In *Gibbs* v. *Ougier*, 12 *Ves.* 413, the master of the rolls says : If you can find a substantive and independent intention to turn the real estate, at all events into personal, that will do; not where there is only a specific purpose, and no conversion, except to answer that purpose, as if the direction is to convert the estate in order to give a legacy, the creditors cannot come and take that from the legatee, merely as that is the mode in which it is given to him. In that case the executors were ordered to sell all the testator's lands and to dispose of it to different legatees. There was no provision for the payment of the debts. A creditor, by simple contract, filed his bill praying the usual decree, and that, in case the personal estate should not be sufficient to satisfy the debts, the real estate might be declared liable to make good the deficiency. The counsel argued it was the intention of the testator, to all intents and purposes, to convert the real estate into money, by the effect of which direction it was mere personal estate, and would be taken as such by the executor or next of kin, and by analogy the court should say it could not be got at without paying the debts. But the court decided that the creditors could not take the estate from the legatee merely, because, on transmitting it from the hands of the executor to the legatee, it assumed the shape of personal property. It was converted for one specific purpose, and for that only was personal property.

It makes no difference, in respect to this question, in what quality the devisee took the property, whether as real or personal. As far as she was concerned it was personal property; for, as such, it was the intention of the testator she should take it. In the event of her death it would have gone to her personal representative. But the land was converted for no purpose except that which the will directed; and if the creditors have any claim to it, they must show it under the will. The conversion was merely the mode in which the estate was given for certain specific purposes; and simply because that mode has been adopted, it cannot so change its character as to defeat the intention of the testator. The executor had no right to take the proceeds of the sale for any other purpose but that directed by the will. It was not personal property for any other purpose. It is admitted that without this fund the personal estate of the testator was deficient. In contemplation of the statute, then, the personal estate of the testator was not sufficient to pay his debts.

But, on behalf of the respondent, it was further insisted that part of the debts remaining unpaid were debts which were to be paid out of the proceeds of the Binghampton property. The debts to be paid out of this fund were the debts of Peter, for which the testator was bound as surety. The Binghampton property had been purchased by the testator of his son, for the sum of $2300, six hundred and seventy dollars of which sum the testator was liable to pay on notes of that amount on which he was security for his son; six hundred and seventy-five dollars money, borrowed on his own notes for his son, and one thousand dollars cash, which he had lent to Peter. These several items the testator had charged against his son in a small book kept by him. It was insisted that it was the testator's intention that the proceeds of the sale of the property should pay these several sums of money. The language of the will does not admit of such a construction. The fund was bound for no debts except such as the testator was bound as surety for his son *at the time the will was made.* It was competent for the respondent to show what debts the

testator was surety for at the time of making the will. The will does not show on its face what these debts were, and extrinsic evidence must necessarily be resorted to for the purpose. It does not appear, by the case agreed upon, that there were any other such debts, except those amounting to $716.55, due upon the notes of his son, on which the testator was security.

With the view I have taken of the case, it is unnecessary to examine the question, as to the effect upon the point in controversy of the executor's having sold the Binghampton property without first having taken out letters testamentary in the state of New York.

The case must be remitted to the Orphans Court, with directions to proceed and make decree for the sale of the real estate of the testator to pay his debts, or so much thereof as may be necessary for the purpose.